COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.  2-07-196-CR

 

 

LACARLTON DEWAYNE MITCHELL                                        APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

              FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

LaCarlton Dewayne Mitchell appeals his conviction
and ninety-nine year sentence for murder. 
In a single issue, he argues that the trial court abused its discretion
by admitting evidence concerning Appellant=s gang
membership.  We affirm.








                                                Background

Da=Milla
Walker was gunned down in a drive-by shooting in front of a house in Wichita
Falls around midnight on June 28, 2005. 
She was fifteen years old.  Three
eyewitnesses who were standing on the sidewalk with the victimCShytinka
Combs, Miesha McGee, and Damishia WalkerCtestified
that they and Da=Milla had argued with two other
girls, Rafiki Norwood and Shonda Mitchell (Appellant=s
sister), shortly before the shooting. 
All three eyewitnesses testified that after the argument, two cars drove
slowly down the street together and stopped in front of the house; then the
shooting started.

Combs testified that she saw Appellant in the
first car but did not see him holding a gun. 
McGee could not identify the people in the two cars, but she said that
shots were fired from both vehicles. 
Walker testified that she saw Appellant in the second car holding
something like a machine gun.  Combs and
Walker identified Brian NorwoodCRafiki
Norwood=s
brotherCas
another shooter in one of the cars.








Walker further testified there were five boys
outside the house on the porch before the shooting began, including the
deceased girl=s cousin, Cedric, who was the
owner of the house.  Walker was sitting
on a car and the other girls were leaning against it.  When the shooting started, the girls took
cover and, when the shooting stopped and the cars left, they ran to a house on
another street.  They realized Da=Milla
was not with them, and they returned to the first house to find her on the
ground dead.

During the shooting, over thirty shots were fired
at the house from two weapons.  Based on
the number, type, and location of shell casings found at the scene, police determined
that the gunmen fired shots at the house in a way that suggested a drive-by
shooting and that shots were also fired from the porch or driveway toward the
street.  The medical examiner testified
that the bullet that killed Da=Milla
was a .223 caliber bullet fired from an assault rifle like an M-16.  Tarbara Williams, who was serving time on a
federal felon-in-possession-of-a-firearm charge at the time of trial, testified
that a month prior to the shooting, he had seen Appellant in possession of two
assault rifles, including an M-16 or AK-47. 








Before trial, Appellant filed a motion in limine
regarding evidence of Appellant=s gang
affiliation, arguing that there was no evidence that the murder was
gang-related.  The trial court denied the
motion.  During trial, the State offered
testimony from several witnesses concerning Appellant=s gang
membership and gang violence in Wichita Falls that summer between the KEP gang
and the Bloods.  Appellant objected to
the first instance of such evidence as irrelevant and as having a prejudicial
effect that outweighed its probative value. 
See Tex. R. Evid. 402, 403. 
The trial court overruled his objections, but it granted him a running
objection to all gang-related evidence.

Shytinka Combs testified that the men in the
victim=s family
identified themselves as members of the Bloods gang and that Appellant and
Norwood are members of the rival KEP gang. 
Darlene York, custodian of records for the Wichita County Sheriff=s
Department, produced a Aspecial needs@ jail
housing form on which Appellant identified himself as a member of KEP.  Wichita Falls Police Lieutenant Tommy Smythe,
who worked gang intelligence for the department with eighteen years of
experience, testified that Appellant was known to police as a member of KEP and
that the resident of the house where the shooting occurred and his companions
are known to the police as members of the Bloods.  He further testified about the friction
between the Bloods and KEP, including family members, and drive-by shootings
targeting specific residences with random gunfire.

The jury found Appellant guilty of murder and
assessed punishment at ninety-nine years in prison and a $10,000 fine, and the
trial court sentenced him accordingly. 
This appeal followed.








                                                Discussion

In his sole point, Appellant argues that the
trial court erred by admitting evidence of his gang affiliation because the
evidence was irrelevant and unduly prejudicial.

Rule 402 provides that Aall
relevant evidence is admissible, except as otherwise provided . . . .  Evidence which is not relevant is
inadmissible.@ 
Tex. R. Evid. 402.  Evidence is
relevant if it has any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence. 
Tex. R. Evid. 401.








Rule 403 allows for the exclusion of otherwise
relevant evidence when its probative value Ais
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.@  Tex. R. Evid. 403.  Rule 403 favors the admission of relevant
evidence and carries a presumption that relevant evidence will be more
probative than prejudicial.  Shuffield
v. State, 189 S.W.3d 782, 787 (Tex. Crim. App.), cert. denied, 127
S. Ct. 664 (2006) (citing Williams v. State, 958 S.W.2d 186, 196 (Tex.
Crim. App. 1997)).  The burden is on the
opponent of the proffered evidence to demonstrate the prejudicial attributes of
the evidence and to show how these attributes substantially outweigh the
probative value of the evidence.  Goldberg v. State, 95 S.W.3d 345, 367
(Tex. App.CHouston [1st Dist.] 2002, pet.
ref=d), cert.
denied, 540 U.S. 1190 (2004).  A rule
403 analysis should include, but is not limited to, the following factors:

(1)  how probative the evidence is;

 

(2)  the potential of the evidence to impress the
jury in some irrational, but nevertheless indelible way;

 

(3)  the time the proponent needs to develop the
evidence; and

 

(4)  the
proponent=s need for the evidence.

Shuffield, 189 S.W.3d at 787.  The reviewing court should do more than
decide whether the trial judge did in fact conduct the required balancing
between probative and prejudicial values; the trial court=s
determination must be reasonable in view of all relevant facts.  Id.

In this case, the non-gang-related evidence shows
that two or more people in two cars fired thirty to forty shots, some from an
assault weapon, at a group of teenage girls and a house after the girls had an
argument with Appellant=s and Norwood=s
sisters.  With this in mind, we turn to
the relevance of and the prejudice arising from the gang-related evidence.








Evidence of gang affiliation is relevant to show
motive for an allegedly gang-related crime. 
Vasquez v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002).  The State argued that the gang rivalry
between Appellant=s gang, KEP, and the Bloods, to
which the victim=s family belonged, showed the
killer=s or
killers= motive
for escalating what had been an argument between fourteen- and fifteen-year-old
girls into a fire fight in which over thirty shots were fired and one of the
girls was shot dead.  In his closing
argument to the jury, Appellant=s
counsel suggested that the surviving girls concocted the entire story about
Appellant=s involvement in the
shooting.  Appellant=s gang
affiliation and the affiliation of the girls= relatives
in a rival gang tend to show why Appellant and his fellow gang members would
fire so many gun shots at these particular girls and this particular
house.  We therefore hold that the trial
court did not abuse its discretion by overruling Appellant=s
relevance objection.

We turn now to the rule 403 factors to determine
whether the danger of unfair prejudice substantially outweighed its probative
value.  First, as we have just noted, the
evidence was strongly probative of motive for the shooting.  See Shuffeld, 189 S.W.3d at 787.








Second, the evidence had the potential to impress
the jury in an indelible, though not necessarily irrational, way.  See id.  The fact of Appellant=s gang
membership and the existence of the feud between KEP and the Bloods makes a
powerful but rational inferential connection between the argument among the
girls and the bloody fusillade that followed. 
Appellant argues that the mere fact of his gang membership had the
potential to lead the jury to the irrational belief that because Appellant was
a member of a gang, he must therefore be guilty. In so arguing, Appellant
ignores the middle step in the link between gang membership and guilt: Appellant
was a gang member; therefore Appellant had a motive to shoot up the family and
house of rival gang members; therefore Appellant is more likely to be
guilty.  We hold that this second factor
weighs in favor of admitting the gang-related evidence.








The third factor is the time needed to develop
the evidence.  See id.  As the State observes, only about
thirty-nine pages of the 402 pages of testimony recorded at the guilt-innocence
phase of trial, or about one-tenth of the testimony,  concerned gang-related evidence.  Other courts, including the court of criminal
appeals, have held that greater proportions of trial time spent on extraneous
offenses did not militate in favor of their exclusion under rule 403.  See, e.g., Lane v. State, 933
S.W.2d 504, 520 (Tex. Crim. App. 1996) (holding one-fifth of trial time devoted
to extraneous offense was not excessive); Evans v. State, No.
14-07-00037-CR, 2008 WL 190053, at *6 (Tex. App.CHouston
[14th Dist.] Jan. 22, 2008, no pet.) (mem. op., not designated for publication)
(holding one-third of trial devoted to extraneous offense was not
excessive).  We likewise hold that
one-tenth of the testimony was not an excessive amount to spend developing the
gang-related evidence and that this factor does not weigh against admission of
the evidence.

Finally, the State=s need
for the evidence was great.  Absent the
gang-related evidence, the violence of the attack makes little sense and leaves
the motive open to speculation. 
Appellant argues that the most consistent way of looking at the evidence
is that the motive for the killing was personal and arose from the girls=
argument.  But while the argument may
have been the spark that lit the fire, it does not explain the ensuing
conflagration.  The State was entitled to
show motive, i.e., why the argument escalated into a gun fight where one side
fired over thirty shots, and the gang evidence provided the reason.

Having considered the applicable rule 403
factors, we hold that the trial court did not abuse its discretion by admitting
the gang-related evidence over Appellant=s
relevance and rule 403 objections.  We
therefore overrule Appellant=s sole
issue and affirm the trial court=s
judgment. 

PER
CURIAM

 

PANEL: GARDNER, J.; CAYCE,
C.J.; and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  October 23, 2008











[1]See Tex. R. App. P. 47.4.